**William P. ROHRER, Appellant,**

v.

**CONEMAUGH & BLACK LICK RAILROAD COMPANY and United Steelworkers of America and United Steelworkers of America Local Union No. 3176.**

**No. 15436.**

United States Court of Appeals
Third Circuit.

Argued Feb. 1, 1966.

Decided April 18, 1966.

James A. Ashton, Pittsburgh, Pa. (John Regis Valaw, Pittsburgh, Pa., on the brief), for appellant.

Nathan Lipson, Pittsburgh, Pa. (Bernard Kleiman, Chicago, Ill., Elliot Bredhoff, Michael H. Gottesman, Washington, D. C., on the brief), for United Steelworkers of America.

Before STALEY, SMITH and FREEDMAN, Circuit Judges.

STALEY, Chief Judge.[*]

This is an appeal from the entry of summary judgment in favor of the defendants, the Conemaugh & Black Lick Railroad Company, the United Steelworkers of America, and Local 3176 of the United Steelworkers, by the United States District Court for the Western District of Pennsylvania.[1] The issues presented in this appeal arose from the following undisputed facts.

The Conemaugh & Black Lick Railroad Company (referred to hereinafter as the "Railroad") is a subsidiary of the Bethlehem Steel Corporation. In 1947, the Railroad entered into a collective bargaining agreement with the United Steelworkers of America (referred to hereinafter as the "Union").[2] In that same year the National Mediation Board had certified the Union as the bargaining representative of all the employees of the Railroad regardless of their class or craft. For all times thereafter the Railroad's employees have been represented by the Union and, in particular, by Local 3176. At the time this controversy began, the collective bargaining agreement between the Railroad and the Union[3] contained a union shop provision whereby all employees of the Railroad were required to belong to the Union. The contract also provides for a checkoff system for collecting union dues.

William P. Rohrer had been employed as a conductor and brakeman for the Railroad. He was also a member of Local 3176. In March 1964, Rohrer notified the Railroad that he had decided to terminate his membership in the Union and join the Brotherhood of Railroad Trainmen. He instructed the Railroad to stop deducting union dues from his wages. The Railroad complied, but the Union advised Rohrer and the Railroad that this action was invalid because it violated the union shop provision. The Union further advised Rohrer that he could rejoin the Union, but Rohrer refused, insisting that

---

[*] Judge Staley became Chief Judge on March 28, 1966.

[1.] The opinion of the district court is not reported.

[2.] Several other subsidiary railroads of the Bethlehem Steel Corporation entered into similar agreements with the Union at this time.

[3.] The date of this agreement is August 14, 1962.

he had every right to change unions.[4] The Union then sought Rohrer's discharge from employment with the Railroad for failure to meet his union obligations. A hearing was held and Rohrer was discharged. Subsequently, the Union and the Railroad offered Rohrer another opportunity to regain his job and his former status with the Union, but Rohrer also rejected this offer. Instead, he brought suit against the Railroad, the Union, and the Local under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, seeking his reinstatement as an employee of the Railroad, back wages, and accrued benefits. He also sought punitive damages from all the defendants for violating the Railway Labor Act, 45 U.S. C. § 151 et seq. The defendants moved for summary judgment on the ground that as a matter of law the Railway Labor Act had not been violated and therefore Rohrer had no cause of action. After a hearing, summary judgment was entered. Rohrer now appeals to this court, claiming that the district court erred in its construction of the Railway Labor Act.

After reviewing the issues raised in this appeal, we affirm the judgment of the district court.

Appellant first contends that the district court erred in holding that appellant has no right under the Act to change unions. Appellant contends that the Act, particularly § 152, Eleventh (c),[5] permits alternative union membership in a properly designated union that is national in scope.[6] Since the Brotherhood of Railroad Trainmen is such a union, he maintains that membership therein satisfies his obligations under the union shop agreement between his employer and the United Steelworkers. Therefore, appellant urges that his discharge for failure to maintain membership in the Steelworkers was improper.

In an excellent opinion the district court held that the case of Pennsylvania R. R. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480 (1957), precludes appellant's reliance on § 152, Eleventh (c), to sustain his position. It concluded that the Act as construed in Rychlik provides for the right to join unions other

---

4. Four other employees, who had taken the same course of action as Rohrer, agreed to rejoin the Union at this point.

5. Section 152, Eleventh (c), provides:

"(c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service, that is, an employee engaged in any of the services or capacities covered in the First Division of paragraph (h) of section 153 of this title, defining the jurisdictional scope of the First Divison of the National Railroad Adjustment Board, if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; and no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership: *Provided, however*, That as to an employee in any of said services on a particular carrier

at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him: *Provided, further*, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services." 45 U.S.C.A. § 152, Eleventh (c).

6. A union "national in scope" as found in § 152, Eleventh (c), refers to a specific group of unions, already constituted under the provisions of 45 U.S.C. § 153. These are the unions that may elect the labor members to the National Railroad Adjustment Board, whose members come from both labor and management. Pennsylvania R.R. v. Rychlik, 352 U.S. 480, 494, 77 S.Ct. 421, 1 L.Ed.2d 480 (1957).

than the designated bargaining representative of a craft only to meet the narrow problem of intercraft mobility. We agree with the district court that it was not meant to provide a right to an employee under a union shop contract to choose between membership in the authorized bargaining representative and a competing union. A brief look at the history of the Act and the Rychlik case compels this conclusion.

In 1951 the Railway Labor Act was amended to enable a union to require all employees in the bargaining unit to join the union and pay dues so that all employees would share the cost of negotiating and administering collective bargaining agreements.[7] International Association of Machinists v. Street, 367 U.S. 740, 764, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). In addition to the union shop provisions of § 152, Eleventh (a), Congress also passed § 152, Eleventh (c), to meet a particular problem in the railroad industry, the problem of organization by unions along craft lines. As the district court concisely stated,

" * * * Because labor in this industry is organized largely on craft rather than industrial lines, the use of union shop contracts created a problem of intercraft mobility. In order to solve that problem, Congress included the provision involved here, which permits a member of one craft to satisfy union membership requirements in a craft to which he may be transferred temporarily by retaining membership in the union representing his former craft. By not requiring the employee to change union membership during a temporary transfer, his seniority rights are safeguarded."

In 1957, the Supreme Court in the Rychlik case construed the scope and meaning of § 152, Eleventh (c). The Court said that "the only purpose of Section [15] 2, Eleventh (c) was a very narrow one: to prevent compulsory dual unionism or the necessity of changing from one union to another when an employee temporarily changes crafts." 352 U.S. at 492, 77 S.Ct. at 427. Moreover, the Court declared that "the purpose of Congress was not * * * to give employees in the railroad industry any blanket right to join unions other than the authorized bargaining representative, or to help dissident or rising new unions recruit new members. Rather, the sole aim of the provision was to * * * confer on qualified craft unions the right to assure members employment security, even if a member should be working temporarily in a craft for which another union is the bargaining representative."[8] 352 U.S. at 488–489, 77 S.Ct. at 425. To substantiate its decision in part, the Court pointed out that § 152, Eleventh (c), specifically applies only to operating employees and does not apply to nonoperating employees where the problem of intercraft mobility does not exist.[9] Thus, if Congress had intended this section of the Act to provide an employee with a general right to choose between the authorized bargaining representative and a competing union, it would hardly have limited this right to only those who are classified as operating employees. 352 U.S. at 493–494, 77 S.Ct. 421.

In light of the foregoing analysis of the Act, there is clearly no merit to the contention that this case presents us with a situation for the application of § 152, Eleventh (c). Appellant is not faced with the dilemma of intercraft mobility. The Union here represents all the employees of the Railroad without regard to craft or class delineations. Appellant in this case is attempting to accomplish exactly what the Rychlik case holds he was not entitled

---

7. Act of Jan. 10, 1951, 64 Stat. 1238, 45 U.S.C. § 152, Eleventh (a).

8. Even if we should decide that appellant has the right to change unions, it is clear that the Brotherhood of Railroad Trainmen does not represent any craft or class of employees employed by the Railroad.

9. Operating employees are those employees described in § 152, Eleventh (c), which provision refers to § 153, First (h), for a formal definition.

to under the Act—that is, the Act provides employees with a right to change unions *only* to meet the narrow problem of intercraft mobility. 352 U.S. at 492–493, 77 S.Ct. 421.

Appellant places great reliance on Brotherhood of Locomotive Firemen v. Northern Pac. Ry., 274 F.2d 641 (C.A. 8, 1960). That case is wholly distinguishable from the case before us, for there the change of unions was not contested by the parties. The issue in the Brotherhood case turned on the application of § 152, Eleventh (b), which provides for the checkoff of union dues. Therefore, that case cannot be cited for the proposition that appellant has the right to change unions.

The second issue raised by the appellant concerns the validity of the union shop agreement between the Union and the Railroad. Appellant's reasoning is as follows: (1) a union cannot be a party to a valid union shop agreement with a railroad unless it is national in scope as provided in § 152, Eleventh (c); (2) the Steelworkers admits that it never has been ruled to be national in scope within the meaning of the Act; (3) therefore, there was no legally enforceable union shop agreement in this case and the Railroad had no basis for discharging appellant for failure to meet his union obligations.

■ This contention has no merit, for it is based on the wholly erroneous premise that § 152, Eleventh (c), requires every bargaining representative in the rail or airline industry to be national in scope. Legislative history of this section, as set forth in the Rychlik case, is also dispositive of this issue. In Rychlik, the Court made clear the Congressional purpose in passing § 152, Eleventh, of the Act. The purpose of Eleventh (a) and (b) was to legalize the union shop and to provide for a dues checkoff system. Initially, only these two subparagraphs were drafted, and they conferred those rights on *all* qualified bargaining agents. During hearings on the bill, Congress considered the problem of what should be done in the event an employee who was subject to a union shop contract was forced to change to a craft represented by another union. Faced with this problem, Congress drafted an amendment to subparagraph (a), which read, *"Provided, further,* That no such [union shop] agreement shall require membership in more than one labor organization."* Before this amendment could be acted upon, the railroad brotherhoods drafted what is now § 152, Eleventh (c). The purpose of this amendment was exactly the same as the simple and clearly expressed purpose in the original amendment to subparagraph (a) quoted above.

The "national in scope" criterion was included in Eleventh (c) as a limitation of the unions to which an employee may transfer or in which an employee may remain when faced with a temporary change of crafts.[10] This limitation has no effect on the purpose of the amendment except to provide an additional safeguard deemed necessary by the drafters of the bill. By this criterion Congress could be assured that Eleventh (c) would not become a device by which a new or rising union could lure away employees who were already represented by a qualified labor organization. Eleventh (a) contains no requirement that a union be national in scope. Once a union has been certified by the National Mediation Board, as the Union in this case has been, nothing further is required of it to enter into a union shop agreement.

Appellant would have us read the national-in-scope criterion in Eleventh (c), not merely as a limitation on alternative union membership, but also as a limitation on those unions which may enter into

---

10. Congress borrowed the language "national in scope" from § 153 of the Act, which deals with the establishment and functions of the National Railroad Adjustment Board. Under § 153 a union must be certified as national in scope in order to elect labor members to the Board. But certification of a union as national in scope for purposes of § 153 has nothing to do with the qualification of a union to act as a bargaining agent.

union shop agreements. But the Rychlik case completely rejects such an interpretation of Eleventh (c). 352 U.S. at 488–489, 77 S.Ct. at 425. Eleventh (c) is not to be read in a vacuum but rather in light of the purpose it was intended to serve, which we have already set forth. We, therefore, hold that the union shop agreement in this case cannot be challenged merely because the Union is not national in scope. Appellant has cited no case to us, nor has our research uncovered any, which would require us to place a different construction on the Act than that which was given by the Supreme Court in Rychlik.

The judgment of the district court will be affirmed.